IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WILLIAM M. SMITH,

2:14-cv-01725-SB

Plaintiff,

**FINDINGS AND
RECOMMENDATION**

v.

DAVE G. POWELL, Individually and in his
Official Capacity as a Hearings Officer at
Eastern Oregon Correctional Institution,

Defendant.

**BECKERMAN, Magistrate Judge.**

William M. Smith, an inmate at Eastern Oregon Correctional Institution ("EOCI"), filed this

action *pro se* against Hearings Officer Dave G. Powell ("Officer Powell"), in his individual and

official capacity, alleging claims under federal law arising from an inmate misconduct report, and

the subsequent hearing and sanction. Specifically, Smith alleges that Officer Powell, without cause,

found him in violation of prison rules and imposed 120 days in the Disciplinary Segregation Unit,

in violation of his First, Eighth, and Fourteenth Amendment rights. Smith also alleges that Officer

Powell violated his First Amendment right by instructing him not to write letters to members of the

1 – FINDINGS AND RECOMMENDATION

public discussing graphic sexual assault. Smith seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

The parties filed cross motions for summary judgment. Smith filed a Motion for Partial Summary Judgment seeking an entry of judgment against Officer Powell on Smith's due process and free speech claims, alleging that there are no material facts in dispute. Officer Powell filed a Motion for Summary Judgment seeking an entry of judgment against all of Smith's claims, on the grounds of qualified immunity and no legal entitlement to equitable relief. In addition, Officer Powell asks this Court to stay discovery pending the resolution of the cross motions for summary judgment. Smith opposes this request and seeks leave of the Court to stay Officer Powell's motion for summary judgment, permit discovery to proceed, and provide Smith an opportunity to amend his opposition to Officer Powell's summary judgment motion.

For the reasons set forth below, the district judge should grant Officer Powell's motion for summary judgment, and deny Smith's motion for partial summary judgment. In addition, this Court denies as moot Officer Powell's request to stay discovery pending resolution of his claim for qualified immunity, and denies Smith's motion to defer ruling on Officer Powell's motion for summary judgment.

## BACKGROUND

On May 6, 2014, Smith was placed into the Disciplinary Segregation Unit ("DSU") after EOCI corrections officers received a complaint about Smith writing a sexually explicit and threatening letter to a woman who had provided Smith religious counseling during the pendency of his criminal case. (Am. Compl ¶ 5; David G. Powell Decl. ¶ 5; Ex. 3 at 4-35, July 16, 2015.) The letter was thirty-two handwritten pages, described in graphic detail Smith's rape of numerous women

2 – FINDINGS AND RECOMMENDATION

in the past, and suggested Smith would visit the woman if released from prison. (Powell Decl. Ex. 3 at 4-35, Ex. 7 at 2.)

On May 8, 2014, Smith was issued a misconduct report for sending the letter, alleging rule violations for prohibited inmate conduct: Compromising an Employee; Disrespect I; Extortion I; and Disobedience of an Order I. (Powell Decl. Ex. 3 at 1.) The misconduct report quoted sections of Smith's letter that allegedly violated each rule. (Powell Decl. Ex. 3 at 1.) The misconduct report focused on the threatening nature of the letter, citing the following excerpts from Smith's letter: "We can't have you being overly-surprised when you answer the front door to find me standing on your porch" and "One day I'm here serving a life sentence and the next day I'm stopping by to pay you a visit." (Powell Decl. Ex. 3 at 8.)

On May 12, 2014, Officer Powell conducted a disciplinary hearing on the misconduct report. (Powell Decl. Ex. 7.) At the hearing, Smith explained to Officer Powell that the recipient of the letter was not an Oregon Department of Corrections ("ODOC") employee or volunteer. (Powell Decl. Ex. 7 at 2 ("[T]he person I wrote this letter to . . . is not an [O]DOC employee or volunteer . . . never has been."); *see also* Ex. 7 at 3-6 (Smith details the status of the recipient of his letter).) After listening to Smith's testimony, Officer Powell postponed the hearing in order to review the letter and consider testimony that was presented during the hearing. (Powell Decl. Ex. 7 at 6-8.)

A second hearing was held on May 22, 2014. At that time, Officer Powell determined that the recipient of the letter did fit "under the umbrella of [O]DOC and she is an [O]DOC employee and that Smith tried to compromise her." (Powell Decl. Ex. 7 at 10.) Officer Powell found that Smith was in violation of the rule on Compromising an Employee. (Powell Decl. Ex. 7 at 10; Ex. 8.) Officer Powell also found Smith in violation of Disrespect I and Disobedience of an Order I,

3 – FINDINGS AND RECOMMENDATION

however, both of those charges were merged into the more serious charge of Compromising an Employee. (Powell Decl. ¶ 14; Ex. 7 at 10; Ex. 8.) Officer Powell dismissed the Extortion charge for insufficient evidence. (Powell Decl. ¶ 14; Ex. 7 at 10; Ex. 8.)

During the May 22, 2014 hearing, Officer Powell noted that Smith's letter caused the recipient and her husband to become so upset that they now keep a shotgun near their front door. (Powell Decl. Ex. 7 at 10.) Officer Powell instructed Smith, "do not write this kind of content, sexual content about raping old women or sex with underage girls or how you do it, to anyone in the public. I'm giving that directive right now and if you ever do that again, I'm going to write you up again and find you in violation and place you in DSU again." (Powell Decl. Ex. 7 at 10.) Officer Powell ordered Smith to stay in DSU for 120 days, pay a $200 fine, and forfeit all privileges for 28 days. (Powell Dec. Ex. 7 at 10.)

OAR 291-105-0031(1) provides that a hearings officer shall prepare a final order within ten days of a disciplinary hearing, and Officer Powell acknowledges that he failed to comply with that timeline. (Powell Decl. ¶ 21.) Officer Powell explains that between May 22, 2014 and July 2, 2014, EOCI experienced many institutional disturbances – including violent fights – that required him to conduct an unusually high number of disciplinary hearings. The institution was on "lockdown" status many times during that time period. (Powell Decl. ¶ 21.) As a result, Officer Powell did not issue a final written order until July 2, 2014. (Powell Decl. ¶ 8; Ex. 8.) Officer Powell contends, however, that Smith was not required to wait for issuance of the final order before seeking review of his disciplinary hearing and sanction. (Melissa Nofziger Decl. ¶ 3, July 16, 2015; *see also* OAR 291-105-0085(3) (final order not required before inmate petitions for administrative review).)

4 – FINDINGS AND RECOMMENDATION

A final order for a Level 1 rule violation – such as Smith's – is subject to review by the Inspector General. *See* OAR 291-105-0085(1). Smith sought administrative review, and on September 11, 2014, the Inspector General vacated Officer Powell's final order for a lack of evidence. (Nofziger Decl. Ex. 1.) By that time, Smith had served his 120-day sanction in the DSU. Smith's other privileges were restored and the fine he paid was refunded. (Nofziger Decl. Ex. 2.)

## DISCUSSION

### I.    Cross Motions for Summary Judgment

#### A.    Legal Standard

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

#### B.    Analysis

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) a federal constitutional or statutory right was violated; and (2) the alleged violation was committed by a person acting under the color of state law. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Smith alleges that Officer Powell found him in violation of prison rules, without cause, and imposed 120 days in the

DSU, in violation of his First (right to petition for redress of grievance), Eighth (cruel and unusual punishment), and Fourteenth Amendment (due process) rights. Smith also alleges that Officer Powell violated his First Amendment (free speech) right by instructing Smith not to write letters discussing graphic sexual assault to members of the public.

In response, Officer Powell argues Smith's federal claims fail as a matter of law because no clearly established constitutional right is implicated by the allegations that form the basis of Smith's § 1983 claims. Accordingly, Officer Powell contends he is entitled to summary judgment on all of Smith's claims for money damages, on the ground of qualified immunity.[1]

### 1.    Qualified Immunity from Monetary Damages

Qualified immunity shields government officials from liability for civil damages arising from conduct that did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). A plaintiff can overcome qualified immunity by establishing that "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 131 S. Ct. 2074, 2080 (2011). Courts have discretion to "decid[e] which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand."*Pearson,* 555 U.S. at 236. In this case, the Court ends its inquiry at the first prong, finding no genuine issue of material fact that Officer Powell deprived Smith of a constitutional right.

---

[1] Qualified immunity is a defense available to government officials sued in their individual capacity; thus, the immunity is not available to those sued in their official capacity. *Community House, Inc. v. City of Boise, Idaho,* 623 F.3d 945, 966 (9th Cir. 2010).

6 – FINDINGS AND RECOMMENDATION

### (a)    Fourteenth Amendment - Substantive Due Process

Smith alleges that the circumstances of his disciplinary hearing, and the resulting sanction

(disciplinary segregation), violated his liberty interests. Specifically, Smith charges that Officer

Powell knowingly and intentionally found Smith in violation of OAR 291-105-15(4)(h)

(Compromising an Employee), despite no evidence to support Officer Powell's finding. Officer

Powell sentenced Smith to 120 days in the DSU. (Pl.'s Mem. Partial Summ. J 6.) On review,

Inspector General Leonard Williamson concluded that Smith did not violate OAR 291-105-15(4)(h).

By that time, however, Smith had served the entire 120-day sanction due, in part, to Officer Powell's

30-day delay in filing his final order, in violation of OAR 291-105-31(1).[2] In addition, the 120-day

sanction resulted in Smith losing his level three privileged housing and his institutional employment

during that period. (Am. Compl. ¶ 60.)

In response, Officer Powell argues that Smith did not have a protected liberty interest in

avoiding a 120-day sanction and, in any event, the Inspector General vacated Officer Powell's final

order. (Def.'s Mem. Summ. J. 5-6.) Both parties move for summary judgment on Smith's Fourteenth

Amendment due process claims.

In his Amended Complaint, Smith alleges:

- Officer Powell's finding of an OAR 291-105-15(4)(h) violation was not supported by a preponderance of the evidence, in violation of the Fourteenth Amendment (Am. Compl. ¶ 59);

- Officer Powell did not allow Smith to call witnesses, submit documents, or testify on his own behalf, in violation of the Fourteenth Amendment (Am. Compl. ¶¶ 60, 62);

---

[2] The disciplinary hearing was held on May 22, 2014, and Officer Powell should have issued his final order on or before June 1, 2014, but he issued it on July 2, 2014. The Inspector General vacated Officer Powell's order on September 11, 2014.

7 – FINDINGS AND RECOMMENDATION

- • Officer Powell changed the scope of the charges against Smith without providing adequate notice, in violation of the Fourteenth Amendment (Am. Compl. ¶ 61); and

- • Officer Powell deprived Smith of prompt administrative review by delaying the submission of his final order, in violation of the Fourteenth Amendment (Am. Compl. ¶ 63).

(Am. Compl. ¶¶ 59-63.)

The Due Process Clause of the Fourteenth Amendment protects liberty interests that arise either under the clause itself or under state law. *Chappell v. Manderville*, 706 F.3d 1052, 1062 (9th Cir. 2013). Due process claims require a determination of (1) whether a governmental actor interfered with a recognized liberty or property interest; and (2) whether the procedures surrounding the alleged interference were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Standing alone, the Due Process Clause does not confer a liberty interest in freedom from the conditions or degree of confinement ordinarily contemplated by a prison sentence. *Sandin v. Conner*, 515 U.S. 472, 480 (1995). Nevertheless, the Supreme Court recognizes that states "may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 484. However, a federal due process claim does not arise out of the mere violation of state prison regulations. Instead, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 484).

A prisoner's liberty interest is recognized and protected only if prison officials act to affect the prisoner's sentence in an unexpected manner (*e.g.*, transferring the prisoner to a mental hospital

8 – FINDINGS AND RECOMMENDATION

or administering psychotropic drugs), or impose an atypical and significant hardship on the inmate with relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483-84; *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("The Due Process [C]lause provides prisoners two separate sources of protection against unconstitutional state disciplinary actions."). Smith argues that his 120-day sentence in the DSU posed an atypical and significant hardship. (Am. Compl. ¶¶ 61-63.)

In conducting the "atypical and significant hardship" inquiry, courts may consider: "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87). If a protected liberty interest is at stake, the court must then determine whether the procedures used to deprive the prisoner of that liberty violated due process. *See id.* at 860 ("If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process."); *Sandin*, 515 U.S. at 487 (holding that "neither the . . . prison regulation in question, nor the Due Process Clause . . . afforded [prisoner] a protected liberty interest that would entitle him to procedural protections. . . .").

With regard to the first factor, Smith does not allege that he experienced conditions different than other inmates who are housed in segregation. Similarly, with regard to the third factor, Smith does not allege that his segregation extended the duration of his sentence. *See LaFleuer v. Nooth*, No. 2:12-cv-00637-SI, 2014 WL 1236138, at *4 (D. Or. March 25, 2014) (finding no issues of fact regarding conditions of segregation or length of sentence). Smith's due process claims are instead grounded in the second factor: whether the duration of his stay in the DSU and the degree of restraint

9 – FINDINGS AND RECOMMENDATION

imposed caused him a significant and atypical hardship compared to ordinary prison life. (Am. Compl. ¶¶ 61-63.)

The Court first considers whether the duration of Smith's confinement, 120 days, was sufficiently long to invoke a liberty interest. Judges in this district have found that there is no bright-line rule as to the duration of segregation that invokes a liberty interest. *LaFleur*, 2014 WL 1236138, at \*4-5 (collecting cases, and noting that placements in segregation from 40 days to 2.5 years have been found not to be "significant and atypical"). Subsequent to this Court's decision in *LaFleur*, the Ninth Circuit decided *Brown v. ODOC*, and held that a 27-month (810 days) indeterminate stay in segregation, without any "meaningful review" of the confinement, invokes a liberty interest. 751 F.3d 983, 988 (9th Cir. 2014) (prisoner was subjected to solitary confinement for over twenty-three hours each day with almost no interpersonal contact, and denied most privileges afforded inmates in the general population); *see also Evans v. Deacon*, 3:11-cv-00272-ST, 2015 WL 248412, at \*13 (D. Or. Jan. 20, 2015) ("Liberally read, *Brown* may be interpreted to implicate a liberty interest any time that an inmate faces 'lengthy confinement without meaningful review' in a housing unit with conditions which differ significantly from those imposed in whatever housing unit constitutes the 'appropriate baseline.'" (quoting *Brown*, 751 F.3d at 988)).

Smith's stay in the DSU was significantly shorter than the prisoner in *Brown* (a finite 120-day duration compared to an indefinite term that reached 810 days). Indeed, the duration of Smith's disciplinary sentence was substantially shorter than any segregation term found by other courts to implicate a liberty interest. *See, e.g., Ramirez*, 334 F.3d at 861 (remanding for the district court to consider whether the plaintiff's two-year placement in disciplinary segregation constituted an atypical and significant hardship where the segregated unit was "overcrowded and violent," the

10 – FINDINGS AND RECOMMENDATION

isolation "severed" the plaintiff's ties with his family, and the plaintiff was "made a patient of psychiatric programs" while segregated);[3] *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("There are no precise calipers to measure the severity of [segregated housing unit] hardship, but we believe that wherever the durational line is ultimately drawn, 305 days satisfies the standard."); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (eight years with no prospect of release was atypical and significant). Importantly, following the Supreme Court's decision in *Wilkinson* (in 2005), neither the Supreme Court nor the Ninth Circuit has held that a 120-day duration in disciplinary segregation amounts to a significant and atypical hardship. Consistent with controlling authority, this Court finds that the duration of Smith's disciplinary segregation did not implicate a liberty interest.

Next, the Court considers the degree of restraint plaintiff experienced in the DSU. *See Ramirez*, 334 F.3d at 861 (finding that the second factor in the atypical and significant hardship analysis is "the degree of restraint imposed"). Smith contends that the conditions of his confinement were "virtually identical to those described in *Wilkinson*." (Pl.'s Reply 11; William Smith Fourth Aff. ¶ 26, July 1, 2015.) Specifically, Smith alleges:

> The loss of freedom and personal lifestyle privileges for me when I was placed in the DSU, were akin to the loss of freedom and lifestyle privileges experienced by civilians in the community when they are arrested and placed in jail. When I was placed in the DSU *all* of these freedoms and privileges were immediately gone. Instead I was locked down in my cell for 23.5 hours per day, allowed to shower only three times per week for 10 minutes in duration, and the only personal property I was . . . allowed to purchase and possess was writing paper and envelopes. After 30 days

---

[3] On remand, the district court found that there were material facts in dispute regarding plaintiff's liberty interest in remaining free from confinement in the segregated housing unit, but even assuming plaintiff had such a liberty interest, the undisputed facts established that plaintiff received due process for that deprivation. *Ramirez v. Galaza*, Case No. 1:99-cv-6282-OWW-DLB-P (E.D. Cal. Aug. 9, 2006) (ECF No. 117).

I was allowed to also purchase and possess basic hygiene items. I was not allowed
to possess any other personal property for the entire 120 days I was held in the DSU.
The only exception to this was that I was allowed to possess a limited amount of
paper work from my direct appeal which was pending in the state Court of Appeals.

(Smith Fourth Aff. ¶ 26.)

In *Wilkinson*, the Supreme Court considered whether prisoners had a liberty interest in

avoiding an indeterminate assignment to the Ohio State Penitentiary ("OSP"), a Supermax facility.

The conditions at OSP were described as follows:

Conditions at OSP are more restrictive than any other form of incarceration in Ohio,
including conditions on its death row or in its administrative control units. The latter
are themselves a highly restrictive form of solitary confinement. . . . In OSP almost
every aspect of an inmate's life is controlled and monitored. Inmates must remain in
their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in
the cell at all times, though it is sometimes dimmed, and an inmate who attempts to
shield the light to sleep is subject to further discipline. During the one hour per day
that an inmate may leave his cell, access is limited to one of two indoor recreation
cells.

Incarceration at OSP is synonymous with extreme isolation. In contrast to any other
Ohio prison, including any segregation unit, OSP cells have solid metal doors with
metal strips along their sides and bottoms which prevent conversation or
communication with other inmates. All meals are taken alone in the inmate's cell
instead of in a common eating area. Opportunities for visitation are rare and in all
events are conducted through glass walls. It is fair to say OSP inmates are deprived
of almost any environmental or sensory stimuli and of almost all human contact.

Aside from the severity of the conditions, placement at OSP is for an indefinite
period of time, limited only by an inmate's sentence. For an inmate serving a life
sentence, there is no indication how long he may be incarcerated at OSP once
assigned there. . . . Inmates otherwise eligible for parole lose their eligibility while
incarcerated at OSP.

545 U.S. at 214-15 (citations omitted).

The only similarity between conditions alleged by Smith and those endured by OSP inmates

in *Wilkinson* is 23-hour confinement to a cell. Segregation in a DSU cell, standing alone, does not

satisfy the significant and atypical hardship requirement. *See Anderson v. Cnty of Kern*, 45 F.3d

12 – FINDINGS AND RECOMMENDATION

1310, 1316 (9th Cir. 1995) (finding that "administrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence"), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir 1995). Indeed, the Supreme Court noted in *Wilkinson* that the conditions in that case "likely would apply to most solitary confinement facilities[,]" but that the two additional components present – indefinite placement and disqualification from parole consideration – taken together with extreme insolation is what imposed an atypical and significant hardship. *Wilkinson*, 545 U.S. at 224.

Smith also complains about the loss of personal lifestyle privileges during his DSU sanction, but inmates do not have a liberty interest in a particular incentive level. *See, e.g., Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) ("[A] prisoner has no constitutional right to a particular classification status."); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (expressly rejecting a claim that "prisoner classification and eligibility for rehabilitative programs in the federal system" invoked due process protections); *accord Collicott v. Snake River Dept. of Corrections Admin.*, No. 3:12-cv-1443-BR, 2014 WL 910735, at *6 (D. Or. March 10, 2014) ("Plaintiff did not have a federally protected right to a particular incentive level."). *Compare Serrano v. Francis*, 345 F.3d 1071, 1079-80 (9th Cir. 2003) (holding that inmate's "disability – coupled with administrative segregation in an SHU that was not designed for disabled persons – gives rise to a protected liberty interest," where inmate was required to crawl to navigate his cell, avoid the shower, and sit idle during exercise).

Consistent with this Court's analysis, other courts in this district have held that conditions experienced by inmates in the DSU at Oregon state prisons are not atypical or significant, and that therefore a DSU transfer does not implicate a prisoner's liberty interest. *See, e.g., Hudson v.*

*Belleque*, No. 07-cv-158-HA, 2009 WL 2015396, at *3 (D. Or. July 6, 2009) (holding that while

placement in DSU may be significant to the prisoner, such a hardship is not atypical); *Singh v.*

*Czerniak*, No. CV 07-1906-PK, 2009 WL 464461, at *5 (D. Or. Feb. 23, 2009) ("[T]he conditions

of [the plaintiff's] confinement in the [Intensive Management Unit] are similar to conditions in the

Disciplinary Segregation Unit and the Administrative Segregation Unit. . . . Thus, the conditions in

the IMU are not atypical, and do not implicate due process concerns."). Smith has failed to establish

that the conditions of confinement he experienced in the DSU were atypical.

Finally, relying on the Ninth Circuit's decision in *Jackson v. Carey*, 353 F.3d 750 (9th Cir.

2003), Smith argues that the fact that his "disciplinary action was successfully appealed on

administrative review" requires the Court to find a due process violation here. (Pl.'s Reply 11.) In

*Jackson*, a California state prisoner claimed that he was unlawfully transferred from administrative

segregation to disciplinary segregation in the special housing unit, after he successfully appealed a

disciplinary conviction and was awaiting rehearing of the disciplinary charge. *Id*. at 752-54. The

Ninth Circuit held that Jackson "allege[d] enough to survive dismissal," but observed that the inquiry

whether Jackson possessed a protected liberty interest in avoiding confinement in the SHU pending

his rehearing "is better suited to summary judgment." *Id*. at 757. Significant to this Court's analysis,

Jackson alleged a liberty interest in being free from disciplinary segregation pending rehearing after

a successful appeal. In contrast here, Smith did not serve any time in segregation after his

disciplinary sanction was vacated.

Even viewing the facts in the light most favorable to Smith, the record does not support a

conclusion that the duration or degree of Smith's confinement in the DSU invoked a state-created

liberty interest protected under the Due Process Clause of the Fourteenth Amendment. *See, e.g., Fort*

14 – FINDINGS AND RECOMMENDATION

*v. Mauney*, No. 10-cv-1407-AA, 2011 WL 2009351, at *4 (D. Or. May 23, 2011) ("In this case, the 180 day sanction did not increase the duration of plaintiff's incarceration or otherwise trigger due process guarantees."); *Steele v. Czerniak,* No. 05-cv-326-AA, 2006 WL 1804564, at *2 (D. Or. June 27, 2006) ("[B]ecause plaintiff's confinement in disciplinary segregation was consistent with the 'confinement ordinarily contemplated within the sentence imposed' and did not impose any 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,' *Sandin*, 515 U.S. at 484, no due process guarantees attach to the imposition of that sanction."); *see also Hudson,* 2009 WL 2015396 at *3 (84-day sanction insufficient to trigger due process requirements).

In the absence of a constitutional violation, Smith is unable to overcome Officer Powell's qualified immunity. As such, Officer Powell is immune from suit on Smith's claims seeking monetary relief for violations of the Fourteenth Amendment. The district judge should enter judgment for Officer Powell on these claims.

### (b)    Eighth Amendment - Cruel and Unusual Punishment

Smith also alleges that his 120-day DSU sanction violated the Eighth Amendment. (Am. Compl. ¶ 65.) Specifically, Smith alleges Officer Powell's arbitrary ruling and subsequent sanction subjected him to harsh conditions and physical assaults in violation of the Eighth Amendment. (Am. Compl. ¶ 65). Smith alleges that Officer Powell's actions resulted in the following deprivations:

> serve[ing] 120 days in the DSU, from 05-06-14, through 09-02-14, and causing plaintiff to lose his institutional incentive level 3 privileged housing, and causing plaintiff to lose his institutional job and 6 months wages, causing plaintiff to forfeit watching cable television on plaintiff's personal television, listening to music on plaintiff's personal stereo radio and causing plaintiff to be transferred to TRCI's DSU and back to EOCI, resulting in the loss of plaintiff's personal property and causing plaintiff to be held incommunicado for approximately 30 days upon arrival at TRCI's DSU, causing plaintiff to be placed in a DSU cell where he was repeatedly assaulted by his DSU cellmate, and causing plaintiff to be deprived of attending programs, religious services, music concerts, legal library, associating with other prisoners,

attending outdoor recreation in a congregate setting with the ability to engage in sports, jogging, weight-lifting and other congregate recreational activities, attending meals with other prisoners and participating in fundraiser events and weekend card room activities with other prisoners and depriving plaintiff of 3 special holiday BBQ meals, a Dominoes [sic] Pizza, an enhanced steak dinner, and the viewing of over 30 new release DVD movies and numerous other earned lifestyle privileges associated with plaintiff's incentive level 3 privilege level . . . .

(Am. Compl. ¶ 65.)

In response, Officer Powell argues that he was not responsible for the conditions of Smith's DSU confinement and, therefore, cannot be liable to Smith for an Eighth Amendment violation. (Def.'s Mem. Summ. J. 11.) In addition, Officer Powell contends Smith has no constitutional right to a particular incentive level. Both parties move for summary judgment on Smith's Eighth Amendment claim.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crimes. An inmate alleging Eighth Amendment violations based on prison conditions must demonstrate that prison officials were deliberately indifferent to the inmate's health or safety by subjecting him to a substantial risk of serious harm.[4] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Farmer*, 511 U.S. at 838-40; *Wallis*, 70 F.3d at 1077.

To establish an Eighth Amendment violation under § 1983, a prisoner must satisfy "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quotations and citation omitted). First, the deprivation alleged must objectively be

---

[4] The Eighth Amendment's Cruel and Unusual Punishment Clause applies to the states through the Fourteenth Amendment's Due Process Clause. *See Graham v. Florida*, 560 U.S. 48, 53 (2010).

sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In proving the objective component, an inmate must establish that there was both some degree of actual or potential injury, and that society considers the acts that plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to those acts. *Helling v. McKiney*, 509 U.S. 25, 36 (1993); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (noting that the Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" (quotations and citation omitted)).

Second, the subjective component requires that the prison official possess a sufficiently culpable state of mind; that is, "deliberate indifference to inmate health and safety." *Farmer*, 511 U.S. at 834-36. With regard to deliberate indifference, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The subjective component requires proof that the official: (1) was aware of the facts that would lead a reasonable person to infer the substantial risk of serious harm; (2) actually made the inference that the substantial risk of serious harm to the plaintiff existed; and (3) knowingly disregarded the risk. *Id.*; *see also Farmer*, 511 U.S. at 844.

The only condition of confinement alleged by Smith that might be sufficiently serious to meet the first component of the two-part test is the allegation that he was assaulted by his DSU cellmate. *See, e.g., Rhodes*, 452 U.S. at 347 ("But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive

17 – FINDINGS AND RECOMMENDATION

and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[B]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." (citations and internal quotations marks omitted)). However, Smith has not alleged, let alone presented evidence, that Officer Powell was aware of a substantial risk of serious harm, or that he was deliberately indifferent to a substantial risk of serious harm, in connection with the alleged assault. In his Declaration, Officer Powell states: "In my capacity as a Hearings Officer, I do not have control over the conditions of the DSU nor do I have control over which cell the inmates are assigned." (Powell Decl. ¶ 22.) Smith presents no evidence to refute this testimony, nor does he allege that Officer Powell knew that Smith would be, or was, assigned to a combative cellmate. Smith has not satisfied the second component of the two-part test, and therefore has not established an Eighth Amendment violation.

In the absence of a constitutional violation, Smith is unable to overcome Officer Powell's qualified immunity. As such, Officer Powell is immune from suit on Smith's claims seeking monetary relief for a violation of the Eighth Amendment. The district judge should enter judgment for Officer Powell on this claim.

### (c)    First Amendment – Redress of Grievances

Smith also alleges that Officer Powell deprived him of prompt administrative review in violation of the First Amendment by delaying the submission of his final order. (Am. Compl. ¶ 64.) Specifically, Smith alleges Officer Powell "willfully and intentionally delay[ed] preparation and

submission of the final order for approximately 45 days, thereby ensuring that [Smith] would be required to serve most if not all of the 120 days in DSU[.]" (Am. Compl. ¶ 64.)[5]

Officer Powell argues that Smith does not have a constitutional right to administrative review of his sanction within a particular time period.[6] Officer Powell moves, but Smith does not move, for summary judgment on Smith's First Amendment claim for a violation of his right to redress his sanction. (Pl.'s Mot. Partial Summ. J. 1.)

Federal law does not require that prison officials process inmate appeals in any specific way, and there is no constitutional right to a specific appeals process after an inmate is found guilty in a prison disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.") Relevant to the Court's analysis here, prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." *Ramirez*, 334 F.3d at 860 (inmate's claimed loss of a liberty interest in the process of his appeals "lacks the necessary constitutional foundation"); *accord Mitchell v. Marshall*, 564 Fed. Appx. 324 (9th Cir. 2014) ("The district court properly dismissed Mitchell's claim regarding his right to appeal his disciplinary

---

[5] To be clear, Officer Powell should have issued his written order on or before June 1, 2014, but he issued it on July 2, 2014, so the relevant analysis is whether this 30-day delay (not the entire 120-day sanction) violated Smith's First Amendment rights. After July 2, 2014, Smith's appeal was pending before the Inspector General, and that delay is not attributable to Officer Powell.

[6] Alternatively, Officer Powell contends that Smith was not required to wait for issuance of the final order before seeking review of his disciplinary hearing and sanction. (Nofziger Decl. ¶ 3; *see also* OAR 291-105-0085(3) (final order not required before inmate petitions for administrative review).) In response, Smith points out that one prerequisite to filing for review is the hearing case number, which is not provided until issuance of the final order. (Pl.'s Reply 7.) In light of this factual dispute, Officer Powell's argument is not dispositive of the issue.

finding because Mitchell had no constitutional entitlement to an inmate appeals process."); *Opel v. Department of Corrections*, No. C14-5160 RBL-KLS, 2014 WL 6654583, at *8 (W.D. Wash. Nov. 24, 2014) (holding that "there is no constitutional right to an appeal process when an inmate is found guilty in a prison disciplinary hearing"); *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (recognizing that "[t]he simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension") (internal quotations and citations omitted).

OAR 291-105-0031(1) sets forth a procedural requirement that hearings officers issue a final order within ten days of the hearing. However, a mere violation of state prison regulations does not give rise to a constitutional violation. *See, e.g., Sandin*, 515 U.S. at 482 (rejecting the notion that a violation of state prison regulations provides a basis for a procedural due process claim because it "creates disincentives for States to codify prison management procedures"); *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) (explaining that "[p]rocess is not an end in itself" and holding that a State's creation of administrative procedures "does not create an independent substantive right" under the Due Process Clause); *LaFleur*, 2014 WL 1236138, at *4 ("[M]andatory language in a state regulatory scheme alone does not create a liberty interest."). Accordingly, the Court finds Officer Powell's 30-day delay in issuing his final order did not deprive Smith of a federal constitutional right.

In the absence of a constitutional violation, Smith is unable to overcome Officer Powell's qualified immunity. As such, Officer Powell is immune from suit on Smith's claims seeking monetary relief for a violation of the First Amendment claim for a violation of his right to redress his 120-day sanction. The district judge should enter judgment for Officer Powell on this claim.

20 – FINDINGS AND RECOMMENDATION

### (d)    First Amendment – Free Speech

Smith alleges that Officer Powell censored his outgoing mail in violation of the First

Amendment. (Am. Compl. ¶ 67.)[7] At Smith's disciplinary hearing, Officer Powell stated:

> I'm going to tell you right now, I'll give you a directive; do not write this kind of
> content, sexual content about raping old women or sex with underage girls or how
> you do it to anybody in the public. I'm giving that directive right now and if you ever
> do that again I'm going to write you up again and find you in violation and place you
> in DSU again. Do you understand me?

(Powell Decl. Ex. 7 at 10.) Smith contends that this directive from Officer Powell violated his right

to free speech by issuing "a direct order not to write in outgoing letters about plaintiff's past criminal

behavior or the criminal cognition supporting the behavior, and threatened to further punish plaintiff

for any such writing . . . ." (Am. Compl. ¶ 67.) Smith also argues Officer Powell had no authority

to issue such a directive. (Pl.'s Mem. Partial Summ. J. 13.)

In response, Officer Powell states that he issued the challenged directive because he believed

that such limitations are consistent with OAR 291-131-0035(1)(a)(A)(iv), which prohibits an inmate

from sending or receiving:

> Sexually explicit material which by its nature or content poses a threat or is
> detrimental to the security, good order or discipline of the facility, inmate
> rehabilitation, or facilitates criminal activity including, but not limited to, the
> following: . . . (iv) Portrayal of actual or simulated acts or threatened acts of force or

---

[7] In his Motion for Partial Summary Judgment, Smith asserts that he seeks only declaratory relief with respect to his claim that Officer Powell violated his First Amendment rights through the restrictions on Smith's outgoing mail at the disciplinary hearing. (Pl.'s Mem. Partial Summ. J. 14-15.) However, in his Amended Complaint, Smith seeks both nominal and punitive damages and does not limit his request for damages to specific claims. Accordingly, in an abundance of caution, the Court considers whether Officer Powell is entitled to qualified immunity from damages on all claims alleged by Smith. In addition, even under a claim for declaratory relief, the Court is required to consider whether Smith's First Amendment right to free speech was violated by Officer Powell's statements.

21 – FINDINGS AND RECOMMENDATION

> violence in a sexual context, including, but not limited to, forcible intercourse (rape) or acts of sadomasochism emphasizing the infliction of pain.

(Powell Decl. ¶ 17.) The Court liberally construes the allegations in Smith's Amended Complaint and will analyze his First Amendment claim as both a facial and an as-applied challenge to OAR 291-131-0035. Both parties move for summary judgment on Smith's First Amendment claim alleging a violation of his right to free speech.

The Supreme Court's decision in *Procunier v. Martinez* is controlling law on claims involving outgoing prisoner mail. *See Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) ("The standards for evaluation of a First Amendment claim concerning outgoing correspondence sent by a prisoner to an external recipient were established by the Supreme Court in *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14, (1989)); *see also Thornburgh*, 490 U.S. at 413 ("[T]he logic of our analyses in [*Procunier*] and *Turner* [*v. Safley*, 482 U.S. 78 (1987)] requires that [*Procunier*] be limited to regulations concerning outgoing correspondence."). In *Procunier*, the Supreme Court set limits on the censoring of outgoing prisoner mail. A prisoner's outgoing mail may be censored only if "the regulation or practice in question [] further[s] an important or substantial government interest unrelated to the suppression of expression" and "the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved." 416 U.S. at 413 (1974). Security, order, and rehabilitation are considered "important or substantial" government interests. *Id.* Prison officials are afforded "latitude in anticipating the probable consequences of allowing certain speech in a prison environment" as it is "essential to proper discharge of an administrator's duty." *Id.* at 414.

22 – FINDINGS AND RECOMMENDATION

OAR 291-131-0035 enumerates two categories of "Prohibited Mail" to "be confiscated or returned to the sender," including "Sexually Explicit Material" and "Material that Threatens or is Detrimental to the Security, Safety, Health, Good Order or Discipline of the Facility." With regard to sexually explicit material, OAR 291-131-0035(1)(a)(A) describes six types of prohibited "Sexual Acts or Behaviors." The regulation prohibits mail containing any "[p]ortrayal of actual or simulated" penetration or stimulation, sexual violence, sexual contact between two people, or sexual contact between a person and an animal. OAR 291-131-0035(1)(a)(A)(i)–(vi). Literary publications may not be "excluded solely because of homosexual themes or references," except where they violate the rules regarding sexually explicit material. OAR 291-131-0035(1)(d). In addition, "[s]exually explicit material may be admitted if it has scholarly value, or general social or literary value." OAR 291–131–0035(1)(e).

It is settled law that Oregon prisons may regulate an inmate's receipt and possession of sexually explicit materials. Specifically, prison officials may set restrictions on incoming mail provided those regulations are reasonably related to the prison's legitimate penological interest in prison safety. *Thornburgh*, 490 U.S. at 413. Numerous courts have upheld such policies for the purposes of security, safety, prevention of harm, rehabilitation, and maintaining order. *See, e.g., Thornburgh*, 490 U.S. at 405 (upholding restriction of incoming "sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity"); *Bahrampour v. Lampert*, 356 F.3d 969, 973-76 (9th Cir. 2004) (upholding restriction on mail depicting actual or simulated sexual acts, intended to prevent or reduce harmful inmate behavior such as rape and other forms of sexual predation); *Frost v. Symington*, 197 F.3d 348, 357-58 (9th Cir. 1999) (upholding mail rejection of materials depicting

23 – FINDINGS AND RECOMMENDATION

penetration, justified as necessary to ensure safety and prevent harassment or abuse of female officers or other individuals); *Mauro v. Arpaio*, 188 F.3d 1054, 1057-63 (9th Cir. 1999) (upholding restriction on possession of materials showing "frontal nudity including personal photographs, drawings, and magazines and pictorials" where regulation aimed at maintaining jail security, rehabilitating inmates, and reducing sexual harassment of female detention officers).

Nevertheless, a more demanding standard is applied to prison regulations concerning outgoing mail, asking whether a prison's rules further "an important or substantial governmental interest unrelated to the suppression of expression [.]" *Procunier*, 416 U.S. at 413. A regulation on outgoing mail must more closely fit the interest served than a regulation concerning incoming mail, but prison officials do not need to show there is no less restrictive mail policy that could serve the same penological interests. *See Thornburgh*, 490 U.S. at 411-12 (explaining that *Procunier* should not be read as subjecting prison officials to "a strict 'least restrictive means' test[,]" and "required no more than that a challenged regulation be 'generally necessary' to a legitimate governmental interest"); *accord Witherow v. Paff*, 52 F.3d 264, 265-66 (9th Cir. 1995) (holding that the state is not required to show that its outgoing mail regulation satisfies a "least restrictive means test").

The ODOC restricts outgoing written materials when the communication portrays "acts of force or violence in a sexual context. . . ." OAR 291-131-0035(1)(a)(A)(iv). The purpose of such a restriction is to further the interests of security, good order and discipline, inmate rehabilitation, and to limit criminal activity. *See* OAR 291-131-0035(1)(a). Smith challenges subsection (a)(iv) of this regulation, as censoring his ability to write of his "past criminal behavior or the criminal cognition supporting the behavior." (Am. Compl. ¶ 67.) Smith is correct that the OAR prohibits Smith from sending letters to others describing his past criminal behaviors, if those letters include graphic details

of violent sexual assault. However, the Court finds that the challenged restriction promotes security and inmate rehabilitation, and prevents the facilitation of criminal activity. As such, the challenged restriction furthers legitimate penological concerns, unrelated to suppressing expression. *See Witherow*, 52 F.3d at 265-66 (holding that a state prison regulation requiring a cursory visual inspection of contents of an outgoing inmate mail envelope, to check for offensive material in mailings from inmates to public officials, did not violate prison inmate's First Amendment rights); *Clark v. Carter*, No. C05-5613 FDB, 2006 WL 3448689, at *1-2 (W.D. Wash. Nov. 27, 2006) (no First Amendment violation where prisoner's letter to wife constituted obscene speech, and was subject to censorship due to penological interest in furthering prison safety and security).[8]

Next, Smith challenges Officer Powell's application of that policy to his future correspondence. Officer Powell simply warned Smith not to violate the regulation, by sending another sexually explicit letter. Officer Powell placed Smith on notice that such conduct would violate prison regulations, and that he should expect to be sanctioned. (Powell Decl. ¶ 18 ("My comments to Smith were made solely to warn him that if he continued to violate the rules, he would be subject to additional discipline.") As applied here, ODOC has an important governmental interest in preventing inmates from sending unsolicited letters to members of the public recounting the inmate's past acts of graphic sexual violence, especially where, as here, the letter could be interpreted as threatening future sexual violence. The restriction against sexually violent

---

[8] In *Clark*, the court noted that the Washington Department of Corrections implemented a policy to reject "sexually explicit" mail, both incoming and outgoing. 2006 WL 3448689, at *2. This decision was based upon a study in which expert psychologists "found that there was an increase in sexual aggression, threatening the safety and security of the institution, regardless of whether the inmate received the materials from mail coming into him or he created the materials and sent them out to someone else." *Id.*

communications promotes the interests of security, inmate rehabilitation, and prevents the facilitation of criminal activity. *See* OAR 291-131-0035(1)(a). Those interests are unrelated to the suppression of speech.

The Court finds that OAR 291-131-0035(1)(a)(A)(iv) is a valid restraint on Smith's First Amendment rights, both facially and as applied. Accordingly, Officer Powell did not violate Smith's First Amendment rights by warning Smith not to violate OAR 291-131-035 in the future.

In the absence of a constitutional violation, Smith is unable to overcome Officer Powell's qualified immunity. As such, Officer Powell is immune from suit on Smith's claims seeking monetary relief for a violation of the First Amendment claim alleging a violation of his right to free speech. The district judge should enter judgment for Office Powell on this claim.

### (e)    First Amendment – Retaliation

Smith alleges that Officer Powell acted in retaliation for Smith assisting another inmate in obtaining a reversal by the Inspector General of a prior ruling by Officer Powell. (Am. Compl. ¶ 66.) In response, Officer Powell argues that Smith cannot state a First Amendment retaliation claim as a matter of law because there is no constitutional right to assist other inmates with grievances. In addition, Officer Powell contends that Smith failed to allege any "chilling effect" on that right as a result of Officer Powell's conduct. (Def.'s Reply 12.) Officer Powell moves, but Smith does not move, for summary judgment on Smith's First Amendment retaliation claim. (Pl.'s Mot. Partial Summ. J. 1.)

In *Rhodes v. Robinson,* the Ninth Circuit set forth five basic elements necessary to bring a "viable claim of First Amendment retaliation" in the prison context: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,

26 – FINDINGS AND RECOMMENDATION

and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Court must evaluate retaliation claims brought by prisoners in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 482). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).

In reference to the first element of a retaliation claim, a plaintiff is not required to prove that the alleged retaliatory action, in itself, violated a constitutional right. *Pratt*, 65 F.3d at 806 (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); *see also Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns."); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). "The interest cognizable in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive." *Dicey v. Hanks*, No. 2:14-cv-2018JAM AC P, 2015 WL 4879627, at 2 (E.D. Cal. Aug. 14, 2015). Here, Smith's allegation that Officer Powell found him in violation of Rule 4.15, without sufficient evidence, and the imposition of the 120-day sanction, satisfies the first element of a retaliation claim.

In reference to the second and third elements, retaliatory motive, a plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind defendant's conduct.

27 – FINDINGS AND RECOMMENDATION

*Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum v. California Dep't of Corrections*, 647 F.3d 870, 882 (9th Cir. 2011) (*quoting Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).

Smith believes that Officer Powell retaliated against him because Officer Powell was aware of Smith's comments stating that Officer Powell was unable to act as a fair and impartial fact finder. (Am. Compl. ¶ 66.) Specifically, Smith alleges:

> 6.     I wrote a letter to my friend . . . out in the community. In this letter I told her that my only concern about the major misconduct violation I was being accused of, was the fact that Dave Powell, the hearings officer who was going to conduct my hearing, had a history of, "doing whatever he wanted," in his hearings and that he didn't follow his own rules. I explained to my friend that I knew this because I had previously helped another inmate with an unfair hearing conducted by Powell, and that the inmate's unfair decision had been vacated by the Inspector General because of my help.
>
> 7.     Immediately prior to my hearing on 05-22-14, with Dave Powell, in case number 1405 EOCI 0027 EOCI, where Powell found me arbitrarily guilty of violating rule 4.15, and before going on record, Powell told me that he had read my letter to [a friend] and that it was clear from what I had written in the letter about him that I "obviously" had "no respect for him (Powell) at all."

(William M. Smith Seventh Aff. ¶¶ 6-7, Aug. 21, 2015.) Officer Powell denies making these remarks. (Powell Decl. ¶ 19.)

To survive summary judgment, Smith must provide direct or circumstantial evidence of Officer Powell's alleged retaliatory motive. Other than citing his own belief, Smith does not provide any facts to support a finding that Officer Powell sanctioned Smith for sending a sexually violent,

28 – FINDINGS AND RECOMMENDATION

threatening letter, in retaliation for Smith assisting another inmate with a grievance. Smith's mere speculation that Officer Powell acted out of retaliation is not sufficient to survive summary judgment. *See McCollum*, 647 F.3d at 882-83 (holding that assertions made in a complaint or legal memoranda are not evidence and do not create issues of fact); *accord Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (affirming grant of summary judgment where there was no evidence that defendants knew of plaintiff's prior lawsuit or that defendants' disparaging remarks were made in reference to prior lawsuit).

Even assuming the truth of Smith's allegation that Officer Powell read the letter and acknowledged he was aware Smith did not respect him, such a statement is not evidence that Officer Powell retaliated against Smith for assisting other inmates in seeking administrative review of disciplinary proceedings. Instead, such evidence suggests Officer Powell retaliated against Smith, if at all, for reasons of personal animus, which does not constitute protected conduct under the First Amendment. Further, Smith does not allege temporal proximity between his assistance to the other inmate and Officer Powell's actions in this case. Nor does Smith allege that Officer Powell opposed Smith's efforts to assist the other inmate. In addition, other than an uncorroborated, self-serving statement, Smith does not present evidence that Officer Powell acknowledged or was even aware of Smith's role in those other administrative review proceedings. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (citation omitted). Finally, Officer Powell's reasons for the sanction – including that Smith's letter had terrified the recipient of the letter – were clearly not pretextual.

29 – FINDINGS AND RECOMMENDATION

Smith is unable to create a genuine issue of fact as to the second and third elements of his

retaliation claim, and therefore he is unable to state a viable claim of First Amendment retaliation.

*See Rhodes*, 408 F.3d at 567-68 (setting forth the five elements to state a viable claim). As such, the

Court need not reach the other elements of his claim.

In the absence of a constitutional violation, Smith is unable to overcome Officer Powell's

qualified immunity. As such, Officer Powell is immune from suit on Smith's claims seeking

monetary relief for a violation of the First Amendment claim alleging retaliation. The district judge

should enter judgment for Officer Powell on this claim.

**2.    Equitable Relief**

Smith also alleges that Officer Powell violated Smith's constitutional rights, acting in his

official capacity. Smith seeks three forms of equitable relief against Officer Powell: a declaration

that Officer Powell violated his constitutional rights, an injunction prohibiting Officer Powell from

acting as a hearings officer in cases involving Smith, and an injunction preventing Officer Powell

from committing any further acts of retaliation. (Am. Compl. at 22-23.)

Eleventh Amendment state sovereign immunity does not bar a plaintiff from suing a state

officer in his official capacity as a person under Section 1983, because "official-capacity actions for

prospective relief are not treated as actions against the State." *Will v. Michigan Dept. of State Police*,

491 U.S. 58, 71 n.10 (1989) (quotations and citation omitted). A state official cannot claim qualified

immunity against claims brought against him in his official capacity. *See Kentucky v. Graham*, 473

U.S. 159, 167 (1985).

Although Smith is permitted to sue Officer Powell in his official capacity for injunctive and

declaratory relief, the Court finds that the record does not present a genuine issue of material fact as

30 – FINDINGS AND RECOMMENDATION

to whether Officer Powell violated Smith's constitutional rights, for the reasons discussed above. In the absence of a constitutional violation, Smith's claims against Officer Powell in his official capacity, as with Smith's claims against Officer Powell in his individual capacity, are without merit. Accordingly, the district judge should enter judgment on Smith's claims against Officer Powell in his official capacity.

## II.    Smith's Motion to Stay Summary Judgment and Proceed with Discovery

After the deadline for filing his Opposition to Officer Powell's Motion for Summary Judgment, Smith filed a "Motion to Stay Summary Judgment Until Completion of Discovery and Request for Leave to Amend Plaintiff's Reply to Defendants' MSJ." In that motion, Smith argues he is unable to oppose Officer Powell's request for summary judgment on certain claims without additional discovery. Specifically, Smith contends Officer Powell has refused to provide discovery relating to "Powell's training, inter-departmental communications, previous job performance information, etc.," and Smith contends that the requested discovery "will produce a volume of evidence showing that . . . Powell knowingly violated the law in my hearing and that he is not entitled to qualified immunity." (Smith Seventh Aff. ¶ 9.) The Court construes Plaintiff's request for additional discovery as a motion pursuant to Federal Rule of Civil Procedure 56(d).

### A.    Legal Standard

Federal Rule of Civil Procedure 56(d) provides the applicable legal standard for determining whether a court may defer considering a motion for summary judgment where, as here, the non-moving party asserts that "it cannot present facts essential to justify its opposition." Under Rule 56(d), a general assertion that discovery is incomplete does not provide grounds for deferring resolution of a motion for summary judgment. Instead, "[t]o obtain relief under Rule 56(d), the

31 – FINDINGS AND RECOMMENDATION

plaintiff must show (1) that []he has set forth in affidavit form the specific facts that []he hopes to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *Grant v. Unifund CCR Partners*, 842 F. Supp. 2d 1234, 1242 (C.D. Cal. 2012) (*quoting State of Cal. v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)).

### B.    Analysis

Smith contends that his discovery requests are calculated to produce evidence to show:

> 1) That Powell has an extensive history of refusing to conduct fair hearings, 2) That Powell has had numerous previous unfair decisions vacated or modified by the ODOC's Inspector General or other ODOC administrator, 3) That Powell has received considerable training, instruction and direction from the Inspector General's office and or the Attorney General's office, clearly informing him of the rights inmates have to fair hearings, and clearly showing that Powell is fully aware of the law he is required to follow when conducting inmate disciplinary hearings, and 4) That despite numerous previous reprimands and modifications to his decisions, defendant Powell has continued to do as he wishes in his hearings without regard for the law or the clearly established rights of inmates to receive fair hearings.

(Pl.'s Reply Mot. Stay Discovery 4.)

For purposes of Smith's Rule 56(d) request, the Court assumes Smith has set forth specific facts he plans to elicit from discovery and that those facts exist. *Grant*, 842 F. Supp. 2d at 1242. Smith is unable, however, to show how these facts would defeat Officer Powell's pending summary judgment motion. In reference to Smith's due process claim, the Court found that the duration and degree of the conditions of Smith's confinement in the DSU did not invoke a liberty interest protected under Due Process Clause of the Fourteenth Amendment. In reference to Smith's First Amendment claim, the Court determined there is no constitutional right to a particular review process. In reference to Smith's Eighth Amendment claim, it is undisputed that Officer Powell had no control over Smith's cell assignments, or the conditions, in the DSU. Finally, in reference to

Smith's First Amendment claim, the Court found that even assuming all of Smith's allegations were true, he was unable to state a claim for retaliation. In light of the applicable standards and case law, additional discovery would not defeat summary judgment here. Accordingly, a Rule 56(d) continuance is not warranted. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1101 (9th Cir. 2006) ("Absent a showing by Tatum that additional discovery would have revealed specific facts precluding summary judgment, the district court did not abuse its discretion by denying Tatum's request for a continuance under Rule 56(f)."); *Maljack Productions, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 887-88 (9th Cir. 1996) (Rule 56(f) motion properly denied where nonmoving party "listed a number of facts that, even if established, would not have precluded summary judgment"); *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994) (district court did not abuse discretion in denying Rule 56[d] motion, where "the information sought by [the party opposing summary judgment] would not have shed light on any of the issues upon which the summary judgment decision was based"). The Court denies Smith's request for a continuance.

**III.    Officer Powell's Motion to Stay Discovery**

Pursuant to Federal Rule of Civil Procedure 26(b)(1), Officer Powell moves this Court for an order staying all discovery based on his assertion of a qualified immunity defense. Based upon the foregoing, the Court denies as moot Officer Powell's Motion to Stay Discovery.

## CONCLUSION

The Court recommends that the district judge DENY Smith's Motion for Partial Summary Judgment (ECF No. 42); GRANT Officer Powell's Motion for Summary Judgment (ECF No. 46); and DISMISS, with prejudice, Smith's Amended Complaint (ECF No. 32). Additionally, the Court

33 – FINDINGS AND RECOMMENDATION

DENIES as moot Officer Powell's Motion to Stay Discovery (ECF No. 44); and DENIES Smith's

Motion to Stay Summary Judgment Until Completion of Discovery and Request for Leave to Amend

Plaintiff's Reply to Defendants' MSJ (ECF No. 59).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are

due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed,

the Findings and Recommendation will go under advisement on that date. If objections are filed, a

response is due fourteen (14) days after being served with a copy of the objections. When the

response is due or filed, whichever date is earlier, the Findings and Recommendation will go under

advisement.

Dated this 25th day of January 2016.

STACIE F. BECKERMAN
United States Magistrate Judge